UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL CHILDS,<br>        Plaintiff,<br>v.<br>H. GASCA, et al.,<br>        Defendants. | Case No. 21-cv-09466-DMR (PR)<br><br>**ORDER OF PARTIAL DISMISSAL WITH LEAVE TO AMEND; AND SERVING COGNIZABLE CLAIM** |

## I. INTRODUCTION

Plaintiff, who is currently in custody at the California Health Care Facility, has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleges a violation of his constitutional rights by prison officials at Salinas Valley State Prison ("SVSP"), where he was previously incarcerated. In his complaint, Plaintiff names the following SVSP prison officials in both their individual and official capacities: Correctional Officers H. Gasca and M. Coronado-Rodriguez (hereinafter "Defendant Coronado"); and Correctional Sergeant O. Aragon. Dkt. 1 at 1-2, 6-7.[1] Plaintiff seeks injunctive relief as well as monetary and punitive damages. *Id.* at 20.

Plaintiff has consented to magistrate judge jurisdiction. Dkt. 2. Therefore, this matter has been assigned to the undersigned Magistrate Judge. He has filed a motion for leave to proceed *in forma pauperis*, which will be granted in a separate written order. Dkt. 4.

Plaintiff has also filed requests for expedited screening of his complaint. Dkts. 6, 7. The requests are DENIED insofar as he requests "expedited" consideration, although the complaint has been reviewed today in the normal course of court business. Dkts. 6, 7.

---

[1] Page number citations refer to those assigned by the court's electronic case management filing system and not those assigned by Plaintiff.

Venue is proper because the events giving rise to the claims are alleged to have occurred at SVSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

## II. BACKGROUND

Plaintiff alleges the following in his complaint:

Plaintiff, who uses a cane and wears an ADA[2] mobility impaired vest, was housed at the mental health unit of SVSP during May of 2021. Dkt. 1 at 8. On May 25, 2021, at around 11:30 AM, Plaintiff walked out to the recreational yard ("rec yard") with his vest and cane as well as his "safety sunglasses to protect [his] eyes due to . . . corneal transplant surgery performed on [his] right eye." *Id.* As Plaintiff walked through the first gate, he passed Defendant Gasca, who was assigned to monitor and supervise the rec yard. *Id.* Plaintiff then walked through the last gate and Defendant Gasca said, "last one for yard." *Id.*

Plaintiff walked to the yard tables, and as he was taking off his sunglasses he saw another inmate he had never seen before, who was initially standing several yards away, walk over to Plaintiff and then start attacking him. *Id.* at 9. Plaintiff states the other inmate, who he identified as "Inmate Brown - #BL3696," "started swinging at [Plaintiff] [and Inmate Brown] said, 'This is for the C/O's," before he punched Plaintiff two times in the face, and then in the upper body. *Id.* Plaintiff claims that after Inmate Brown hit him, Plaintiff "grabbed [Inmate Brown's] arms to restrain him from hitting [Plaintiff] in the face again." *Id.* Plaintiff called for help, saying as follows: "C/O help, help, I am being attacked, come and get this guy." *Id.* He called for help for "two minutes or longer," but "the officers did nothing to help [him]." *Id.* Another inmate, who Plaintiff identified as "[Inmate] Nguyen - #BM0511," ran to the gate and started calling for help. *Id.* Plaintiff claims that he and Inmate Brown started falling to the ground," and Plaintiff "somehow got the upper hand on (Brown) [and] [Plaintiff] got up and started restraining Brown." *Id.* at 10. It was at that moment that Plaintiff noticed Defendant Gasca and the other officers at the yard gate. *Id.* Plaintiff told the officers "Help, hit your alarm, he's still trying to attack me." *Id.* Defendant Gasca told Plaintiff to "let go of Brown." *Id.* But Plaintiff refused because Inmate

---
[2] ADA stands for the Americans with Disabilities Act of 1990.

2

Brown was "attempting to hit [Plaintiff] in the face," and Plaintiff told Defendant Gasca, "If I let him go he will keep attacking me." *Id.* Plaintiff asked Defendant Gasca to open the gate, but instead Defendant Gasca ordered all the inmates in the yard to get down and told Plaintiff that he was "not going to open the gate until [Plaintiff] let [Brown] go." *Id.* Plaintiff responded, "I've been calling for help for over 2 minutes, plus I don't hear no alarm." *Id.* And then Plaintiff let Inmate Brown go and walked by the yard restroom area. *Id.* Plaintiff heard the gate to the yard open and the officers run into the yard. *Id.* Defendant Gasca ran toward Plaintiff and threw an "O.C. can grenade" at him even though he "wasn't holding Inmate Brown [and] [Inmate Brown] was no longer attacking [Plaintiff]." *Id.* at 10-11.

After the "O.C. can grenade" was thrown, Defendants Gasca and Coronado approached Plaintiff and ordered him to "get down on the ground." *Id.* at 11. Plaintiff "told him [he] couldn't get down on the ground because [of his] mobility issues, and pointed to [his] cane that was sitting nearby." *Id.* Plaintiff told them he was "an ADA," and Defendants Gasca and Coronado "tried to grab [Plaintiff's] wrist with unnecessary force and tried to handcuff [him] behind [his] back." *Id.* Plaintiff, who denies that he resisted, told Defendant Gasca that he "needed to be cuffed in front because [of] [his] medical chrono." *Id.* Defendant Gasca stated, "I don't care," and "continue[d] to ruff[] [Plaintiff] up with unnecessary force, and cuffed [him] behind [his] back." *Id.* Plaintiff asked if he could grab his cane, but Defendant Gasca denied his request while Defendants Coronado and Aragon were standing close by. *Id.* Defendant Aragon ordered Defendants Gasca and Coronado to search Plaintiff and escort him to the "T.C. 2 Treatment room." *Id.* Defendants Gasca directed Plaintiff to stand, but Plaintiff stated he could not. *Id.* Defendant Gasca "grabbed [Plaintiff's] arm, with force," and as Plaintiff was trying to stand, he slipped and "scrap[]ed [his] knee on the ground." *Id.* at 11-12. Defendant Coronado helped Defendant Gasca assist Plaintiff to his feet, and they escorted Plaintiff to the treatment room. *Id.* at 12.

The nurse documented Plaintiff's injuries. *Id.* Plaintiff suffered a black left eye and "had abrasions on [his] hands, knees and forearms," including "permanent scarring to [his] legs, face, hands and knees." *Id.* at 12-14. Plaintiff also claims that he "continue[s] to have ongoing suffering frequent headaches, nightmares about the assault, and psychological traum[a]." *Id.* at 14.

3

After Plaintiff saw the nurse, Defendant Gasca took Plaintiff back to his cell. *Id.* at 12. Once Plaintiff got to his cell, he noticed that his cane was on his bed. *Id.*

Plaintiff filed a 602 inmate appeal, and Defendant Gasca wrote a "false [Rules Violation Report ("RVR")]" about the incident. *Id.* at 13. Plaintiff was issued an RVR for fighting, and "at the RVR hearing the RVR was dropped and it stated '[Plaintiff] was defending himself.'" *Id.*

Plaintiff lists the following claims in his complaint: (1) Defendants Gasca, Coronado, and Aragon were deliberately indifferent to Plaintiff's safety by failing to intervene during the May 25, 2021 attack on Plaintiff by Inmate Brown; (2) Defendants Gasca used excessive force when he grabbed Plaintiff's wrist with "unnecessary force" and "ruff[ed] [him] up, with unnecessary force and cuffed [him] behind [his] back," while Defendants Coronado and Aragon failed to intervene, Dkt. 1 at 11; (3) Defendant Gasca's aforementioned actions of violating Plaintiff's Eighth Amendment rights was "for the very purpose of causing Plaintiff harm and out of retaliation," *id.* at 16; (4) Defendants Gasca and Coronado discriminated against Plaintiff by "intentionally deny[ing] [Plaintiff] [his] ADA cane," *id.* at 16-17, and ignoring his "special chrono to be cuffed to the front," *id.*, while Defendant Aragon failed to intervene; (5) Defendant Gasca "falsif[ied] [a] government report to cover up his violation" on May 25, 2021; *id.* at 14; and (6) Defendant Aragon failed to "exercise his supervisory responsibility and prevent . . . [Defendant] Gasca from violating [Plaintiff's] rights," *id.* at 19.

### III. DISCUSSION

#### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

4

(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer*, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Evidence of a prisoner's letter to an administrator alerting him to a constitutional violation is sufficient to generate a genuine issue of material fact as to whether the administrator was aware of the violation, even if he denies knowledge and there is no evidence the letter was

received. *Jett*, 439 F.3d at 1098. Evidence that a prison supervisor was personally involved in an unconstitutional transfer and denied all appeals of the transfer, for example, may suffice. *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *see also Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (supervisor who signed internal affairs report dismissing complaint against officer despite evidence of officer's use of excessive force may be liable for damages).

### B. Legal Claims

#### 1. Eighth Amendment – Deliberate Indifference To Safety

The Eighth Amendment's Cruel and Unusual Punishments Clause requires that prison officials take reasonable measures to protect prisoners from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

Plaintiff states a cognizable deliberate-indifference-to-safety claim against Defendants Gasca, Coronado, and Aragon for failing to intervene during the May 25, 2021 attack on Plaintiff by Inmate Brown.

#### 2. Eighth Amendment – Excessive Force

The complaint does not state an Eighth Amendment claim against Defendant Gasca based on Plaintiff's allegation that this correctional officer grabbed his wrist with "unnecessary force" and "ruff[ed] [him] up, with unnecessary force and cuffed [him] behind [his] back." Dkt. 1 at 11. Nor does it state a cognizable claim against Defendants Coronado and Aragon for their alleged failure to intervene. (Under the Plaintiff's list of claims against Defendant Gasca, Plaintiff has characterized Defendant Gasca's actions as retaliation, rather than excessive force, but an excessive force analysis is appropriate in addition to the retaliation analysis. *See* Dkt. 1 at 16.)

6

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S.312, 319 (1986).

According to the complaint, the officers responded to the scene involving what seemed to be a fight between two inmates. Dkt. 1 at 9-11. Then, once the inmates were separated Defendant Aragon ordered Defendant Gasca to search Plaintiff and take him to the treatment center. *See id.* Plaintiff admits that he did not stand up when Defendant Gasca directed him to do so. *Id.* at 11. Thus, the record shows that Defendant Gasca used force to ensure Plaintiff's compliance. Considering Defendant Gasca was acting at the direction of his sergeant (Defendant Aragon) to escort Plaintiff to the treatment center, coupled with Plaintiff's refusal to cooperate, the court has no difficulty concluding that the force applied, i.e., grabbing Plaintiff's arm and forcing him to stand up, was a good faith effort to take Plaintiff to the treatment center and not a malicious or sadistic effort to cause harm. Indeed, Plaintiff's allegations that he "slipped out of [Defendant] Gasca's grip," fell and scraped his knee, merely shows that, at most, Defendant Gasca amounted to negligence and that Plaintiff was hurt accidentally. Plaintiff fails to state a cognizable excessive force claim.

The court finds in the alternative that any harm Plaintiff suffered does not rise to a constitutional level. Every malevolent touch by a prison guard does not give rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *See Hudson*, 503 U.S. at 9-10; *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (plaintiff must show more than *de minimis* injury), *cert. denied*, 513 U.S. 1114 (1995). Plaintiff's alleged rough handling by Defendant Gasca was *de minimis*. Accordingly, Plaintiff's excessive force claim

7

against Defendant Gasca and failure-to-intervene claim against Defendants Coronado and Aragon are DISMISSED with leave to amend. If Plaintiff can allege additional facts to allege that support an excessive-force claim, he may file an amended complaint to allege that claim, as directed below.

### 3. Retaliation

The complaint also does not state a claim for retaliation. Plaintiff alleges that Defendant Gasca's aforementioned actions of violating Plaintiff's Eighth Amendment rights was "for the very purpose of causing Plaintiff harm and out of retaliation." Dkt. 1 at 16. But Plaintiff does not allege specific facts to support his conclusory allegations of retaliation. In order to state a retaliation claim, a prisoner-plaintiff must set forth specific facts showing that (1) a named prison official took some adverse action against plaintiff (2) because of (3) plaintiff's protected conduct, and that such action (4) chilled plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The complaint simply labels Defendant Gasca's actions retaliatory and does not allege any facts that plausibly show that any defendant took adverse action because of Plaintiff's exercise of his First Amendment rights. A retaliation claim is not stated. Thus, Plaintiff's retaliation claim is DISMISSED with leave to amend to correct the aforementioned deficiencies.

### 4. Disability Discrimination

Plaintiff also claims that Defendants Gasca and Coronado discriminated against Plaintiff by "intentionally deny[ing] [him] [his] ADA cane," and ignoring his "special chrono to be cuffed to the front," while Defendant Aragon failed to intervene. Dkt. 1 at 16-17.

#### a. Claim for Relief

Title II of the ADA, 42 U.S.C. § 12101 et seq., and § 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a), prohibit discrimination on the basis of disability in the programs, services or activities of a public entity. The elements of a claim for relief under Title II of the ADA are: (1) that the plaintiff is a qualified individual with a disability; (2) that the plaintiff was either excluded from participation in or denied the benefits of a service, program, or

8

activity of a public entity, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of disability. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th 2001); 42 U.S.C. § 12132.

A claim under Section 504 of the Rehabilitation Act essentially parallels the ADA. *See Olmstead v. Zimring*, 119 S. Ct. 2176, 2182 (1999); *Duvall*, 260 F.3d at 1135. A qualifying "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

### b. Proper Defendants

Plaintiff cannot bring an ADA or Section 504 action against individual prison officials, because the proper defendant in such actions is the public entity responsible for the alleged discrimination. Nor can he bring a section 1983 action against Defendants based on allegedly discriminatory conduct. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a state official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Therefore, Plaintiff cannot being disability discrimination claims against Defendants, who are individual prison officials. Instead, the proper defendants to Plaintiff's disability discrimination claims are the public entities that allegedly denied him equal access to their programs: SVSP and the California Department of Corrections and Rehabilitation ("CDCR"). State correctional facilities are "public entities" within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997). State prisons that receive federal financial assistance are covered by the Rehabilitation Act. *See Armstrong*, 124 F.3d at 1022-23.

As state agencies, these entities are shielded from suit in federal court unless they waive

their sovereign immunity or Congress has validly abrogated their sovereign immunity in the applicable statute. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). In *Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that Congress did not have the power to abrogate the States' Eleventh Amendment immunity under Title I of the ADA, but declined to reach the question whether Congress validly abrogated the States' immunity as to Title II. *See id.* at 360 n.1. The Supreme Court specifically noted that Title II has somewhat different remedial provisions from Title I. *Id.* For purposes of initial review, this court will assume that the California prisons do not enjoy Eleventh Amendment immunity with respect to Plaintiff's ADA claims.

As to the Rehabilitation Act, the Ninth Circuit has held that, "[b]ecause California accepts federal funds under the Rehabilitation Act, California has waived any immunity under the Eleventh Amendment" as to that Act's anti-discrimination provisions. *See Clark v. State of California*, 123 F.3d 1267, 1271 (9th Cir. 1997); *see also Douglas v. California Dept. Youth Authority*, 271 F.3d 812, 819 (9th Cir.), *amended*, 271 F.3d 910 (9th Cir. 2001) (adhering to *Clark* after Supreme Court's decision in *Garrett*.) Thus, Plaintiff may pursue claims for both money damages and prospective injunctive relief under the Rehabilitation Act directly against SVSP and the CDCR.

In sum, assuming Plaintiff has a valid disability discrimination claim, he may assert the claim in amended complaint against SVSP and the CDCR, but not against any individual defendants.

**c. Analysis of Claim**

Even assuming Plaintiff's allegation that he is receiving ADA accommodations could establish that he is an individual with a disability under the federal statutes, he has not alleged discriminatory conduct. Plaintiff makes conclusory allegations that Defendants Gasca discriminated against him because of his disability by failing to give him access to his cane and ignoring his "special chrono" to be handcuffed in the front, directly after the May 25, 2021 incident. Dkt. 1 at 16-17. Plaintiff does not allege that he was treated differently than similarly-situated non-disabled inmates and he does not allege that he was excluded from participation in a

1 prison program or service because of his disability. Therefore, he does not appear to have a cognizable disability discrimination claim.

If Plaintiff names SVSP and the CDCR as Defendants, his ADA and Section 504 claims against these public entities are DISMISSED with leave to amend. Plaintiff may reassert the claims in his amended complaint if he can in good faith allege that he is an individual with a disability under the federal statutes, that the prison discriminated against him on the basis of his "disability," and if he names the proper Defendants.

### 5. False Reports/Cover-Up Claim

Plaintiff alleges that Defendant Gasca "falsif[ied] [a] government report to cover up his violation" on May 25, 2021. Dkt. 1 at 14. Allegations that officials engaged in a cover-up state a constitutional claim if the cover-up deprived the plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 625 (9th Cir. 1988) (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit."). A cover-up claim is premature when, as here, the plaintiff's action seeking redress for the underlying constitutional violations remains pending. *See id.* at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); *see also Rose v. Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993) ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.").

Here, if Plaintiff succeeds on his deliberate-indifference-to-safety claim, then he will have suffered no injury caused by Defendants Gasca's alleged false reports. (The court further notes that Plaintiff indicates that the RVR was later "dropped" at the RVR hearing due to the fact that he was found to be "defending himself." Dkt. 1 at 13.) If, however, Plaintiff does not succeed on his Eighth Amendment claim, then Defendant Gasca may have successfully impeded Plaintiff's right of access to the courts. Thus, the court finds the cover-up claim is not ripe until he can show that his underlying suit—his pending Eighth Amendment claim—has failed. Because Plaintiff has not yet suffered harm as a result of Defendant Gasca's alleged cover-up, this claim is DISMISSED

11

with leave to amend if Plaintiff believes he can correct the aforementioned deficiencies.

### 6. Supervisorial Liability Claim

In addition to Plaintiff's above-mentioned failure-to-intervene claims against Defendant Aragon, Plaintiff also sues Defendant Aragon in this defendant's supervisory capacity for failing to "prevent [Defendant] Gasca from violating [Plaintiff's] rights." Dkt. 1 at 19. Plaintiff seems to claim Defendant Aragon is liable based on the conduct of his subordinate, Defendants Gasca. There is, however, no respondeat superior liability under section 1983 solely because a defendant is responsible for the actions or omissions of another. *See Taylor*, 880 F.2d at 1045. A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman*, 942 F.2d at 1446.

Plaintiff has not stated a cognizable supervisory liability claim against Defendant Aragon. Therefore, this claim against Defendant Aragon is DISMISSED with leave to amend to correct the aforementioned deficiencies.

## IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiff's requests for expedited screening of his complaint are DENIED insofar as he requests "expedited" consideration. Dkts. 6, 7.

2. Plaintiff's complaint states a cognizable claim of deliberate-indifference-to-safety claim against Defendants Gasca, Coronado, and Aragon for failing to intervene during the May 25, 2021 attack on Plaintiff by Inmate Brown.

3. The court DISMISSES with leave to amend Plaintiff's remaining claims. If Plaintiff chooses to file an amended complaint, he must file the amended complaint within **twenty-eight (28) days** of the date of this Order. The amended complaint must include the caption and civil case number used in this Order, Case No. C 21-cv-9466-DMR (PR) and the words "AMENDED COMPLAINT" on the first page. Plaintiff must use the court's complaint

12

form and answer all the questions on the form in order for the action to proceed. Because an amended complaint completely replaces the previous complaints, Plaintiff must include in his amended complaint *all* the claims he wishes to present, including any amended claims as well as the Eighth Amendment deliberate-indifference-to-safety claim against Defendants Gasca, Coronado, and Aragon, which the court has already found cognizable. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Plaintiff may not incorporate material from the prior complaint by reference. Failure to file an amended complaint in accordance with this Order in the time provided will result in the following: (1) the dismissal of his remaining claims, including his excessive force claim against Defendants Gasca (and failure-to-intervene claim against Defendants Coronado and Aragon), his retaliation claims against Defendant Gasca, his claim of disability discrimination against Defendants Gasca and Coronado (and failure-to-intervene claim against Defendant Aragon), his cover-up claim against Defendant Gasca, and his supervisory liability claims against Defendant Aragon; (2) the initial complaint (Dkt. 1) remaining the operative complaint; and (3) this action proceeding in accordance with this Order.

    4.  The following Defendant(s) shall be served: **Correctional Officers H. Gasca and M. Coronado-Rodriguez; and Correctional Sergeant O. Aragon at SVSP.**

    Service on the listed Defendant(s) shall proceed under the California Department of Corrections and Rehabilitation's (CDCR) e-service pilot program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the clerk is directed to serve on CDCR via email the following documents: the operative complaint, this order of service, the notice of assignment of prisoner case to a United States magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent form, a CDCR Report of E-Service Waiver form and a summons.

    No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which Defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which Defendant(s) decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver

13

and of the notice of assignment of prisoner case to a magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent form to the California Attorney General's Office, which, within **twenty-one (21) days**, shall file with the court a waiver of service of process for the Defendant(s) who are waiving service and, within **twenty-eight (28) days** thereafter, shall file a magistrate judge jurisdiction consent or declination to consent form as to the Defendant(s) who waived service.

Upon receipt of the CDCR Report of E-Service Waiver, the clerk shall prepare for each Defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form. The clerk shall provide to the USMS the completed USM-205 form and copies of this order, summons, operative complaint and notice of assignment of prisoner case to a magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent form for service upon each defendant who has not waived service. The clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

The clerk shall also mail a copy of the operative complaint and a copy of this order to the State Attorney General's Office in San Francisco. Additionally, the clerk shall mail a copy of this order to Plaintiff.

5. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires Defendants to cooperate in saving unnecessary costs of service of the summons and complaint. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(A)(ii), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the CDCR provides a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office. (This allows a longer time to respond than would be required if formal service of summons is necessary.) If Defendants have not waived service and have instead been served by the USMS, then Defendants shall serve and file an answer within **twenty-one (21) days** after being served with the summons and complaint.

6. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

14

a. No later than **sixty (60) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[3] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in Rand must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the court notes that under the new law of the circuit, in the rare event that a failure to exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date the summary judgment motion is due. All papers filed with the court shall be promptly served on Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the court

---

[3] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

        c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that—in the rare event that Defendants argue that the failure to exhaust is clear on the face of the complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents—documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment

motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.      Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

        e.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

7.     Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

8.     All communications by Plaintiff with the court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

9.     It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the court has been returned to the court as not deliverable, and (2) the court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

10.    Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

11.    This Order terminates Docket Nos. 6 and 7.

IT IS SO ORDERED.

Dated: July 7, 2022

DONNA M. RYU
United States Magistrate Judge

17